IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CANDACE HALL<br>1908 Thayer Terr.<br>Gwynn Oak, MD 21207<br><br>      Plaintiff,<br><br>   v.<br><br>ADAM RICE, and SIEBIE DUGGER,<br>and FASTENAL COMPANY<br><br><br>Serve:  CSC Lawyers Incorporating Co.<br>         7 Saint Paul Street Ste. 820<br>         Baltimore, MD 21202<br><br>      Defendants. | Civil No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Candace Hall (hereinafter "Plaintiff" or "Ms. Hall"), by and through her attorneys, Tonya Baña and David Baña, hereby files this Complaint against Defendants Adam Rice ("Mr. Rice" or "Rice") Siebie Dugger ("Mr. Dugger" or "Dugger") and Fastenal Company ("Fastenal") (collectively referred to as "Defendants") to redress interference with her rights and discrimination and retaliation in violation of the Family and Medical Leave Act (the "FMLA" or the "Act"), as amended, 29 U.S.C. § 2601 *et seq.*, and in support thereof alleges and states as follows:

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 29 U.S.C. § 2617 because this action arises under the FMLA. Personal jurisdiction is proper under Maryland's long-arm statute because Defendants conduct extensive business in Maryland and the events giving rise to this litigation occurred in Maryland.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff worked at a facility located in this District and a substantial part of the events or omissions giving rise to her claims took place in this District.

## PARTIES

3. Candace Hall (formally Candace Thomas-Hall) is a citizen and resident of Baltimore County, Maryland. Ms. Hall was employed by Fastenal as a sales associate from January 2015 to September 5, 2019. At all relevant times, Plaintiff worked at Fastenal's Baltimore location and was a full-time employee working forty (40) hours per week. At all relevant times, Plaintiff was an employee eligible for leave under the Act.

4. Upon information and belief, Adam Rice is a citizen and resident of the Commonwealth of Pennsylvania. Mr. Rice was, at all relevant times, employed by Fastenal as the District Manager that oversaw the Baltimore location, which was Plaintiff's worksite. At all relevant times Mr. Dugger was under the direct supervision of Mr. Rice. As the District Manager, Mr. Rice could override any and all of Mr. Dugger's management decisions. Mr. Rice was a direct and substantial participant in the wrongful conduct alleged

and at all relevant times was acting both individually and as an actual and/or apparent agent, servant, and/or employee of Fastenal and acting, directly or indirectly, in the interest of Fastenal with respect to Plaintiff.

5. Upon information and belief, Siebie Dugger is a citizen and resident of Maryland. Mr. Dugger was at all relevant times employed by Fastenal as General Manager for its Baltimore location, which was Plaintiff's worksite. At all relevant times, Plaintiff was under the direct supervision of Mr. Dugger. As the General Manager for that site, Mr. Dugger had ultimate responsibility for enforcing Fastenal's policies and procedures and for hiring and firing the sales personnel who worked at that location, and he had independent discretion to make personnel decisions concerning the employees at that location. Mr. Dugger was a direct and substantial participant in the wrongful conduct alleged and at all relevant times was acting both individually and as an actual and/or apparent agent, servant, and/or employee of Fastenal and acting, directly or indirectly, in the interest of Fastenal with respect to Plaintiff.

6. Fastenal Company is a corporation organized and existing under the laws of the State of Minnesota with its corporate headquarters located in Winona, Minnesota. Fastenal is engaged in the wholesale distribution of industrial and construction supplies such as threaded fasteners, bolts, nuts, screws, studs, and related washers, as well as miscellaneous supplies and hardware. Fastenal has retail stores in every U.S. state and employs over 16,000 people nationwide. At all relevant times, Fastenal employed more than fifty (50) employees within a 75-mile radius of Plaintiff's workplace.

3

## STATEMENT OF FACTS

### *Ms. Hall's Background and Employment with Defendants*

7. Ms. Hall is a lifelong Baltimore area resident, a Forest Park High School Graduate (class of 2002) and a married mother of two children.

8. Ms. Hall currently works for the Johns Hopkins University School of Education as a Senior Administrative Coordinator.

9. Ms. Hall worked at Fastenal for over three (3) years before she was initially diagnosed with life threating Stage III cancer (her "serious health condition") in the summer of 2018, which is when she made the request for FMLA-qualifying intermittent leave that would ultimately result in her discharge.

10. Ms. Hall was initially recruited to work for Fastenal by Dugger in 2015. When Mr. Dugger recruited Plaintiff, she did not have a serious health condition.

11. Throughout Ms. Hall's employment with Fastenal, her job performance consistently met or exceeded Fastenal's legitimate expectations.

### *Ms. Hall Needs Leave for Ongoing Cancer Treatments*

12. In the summer of 2018 and throughout the remainder of her employment with Fastenal, Plaintiff required time off from work for life-saving cancer treatments and ongoing follow-up visits, oncologist visits, diagnostic visits, and medical testing and imaging procedures related to her life-threatening cancer.

13. Around the same time, Ms. Hall gave notice to Dugger and Fastenal of her serious health condition and sought leave under the FMLA which was ostensibly approved.

14. Fastenal required notice of Plaintiff's leave as soon as practicable.

15. Fastenal also required a doctor's note for absences related to Plaintiff's serious health condition.

16. Throughout her leave and up to and including the date of her discharge, Plaintiff complied with Dugger's and Fastenal's requirements regarding leave related to her serious health condition.

17. Typically, Plaintiff would find out about her medical appointments one to two months in advance and she would notify Dugger of her upcoming appointments as soon as practicable after they were made as Fastenal and Dugger required. Plaintiff would often remind Dugger of her upcoming appointments in the days leading up to them.

18. With respect to providing physicians' notes excusing her absences after her medical treatments, Duggar required Plaintiff to place the notes in a file that he maintained for the Plaintiff located on his desk and nothing more. Plaintiff was not required to physically hand or electronically deliver, or otherwise submit her physicians' notes to anyone directly.

*Events Leading Up To Plaintiff's Unlawful Discharge in Violation of the FMLA*

19. In January of 2019, Plaintiff's paid leave reset for the calendar year, and she began using her paid leave for the medical appointments required to treat her serious health condition.

20. In or around July or August of 2019, Plaintiff ran out of paid time off and was notified by Fastenal that her leave was protected so long as she provided a doctor's note excusing her absence and was eligible for leave under the Act (which she was).

21. Although Dugger was initially sympathetic when Plaintiff first told him of her serious health condition in 2018, in the months and weeks leading up to her discharge, Duggar's attitude toward Plaintiff turned cold.

22. For example, Dugger stopped engaging the Plaintiff in casual conversation.

23. Moreover, Dugger failed to act or was otherwise very slow in responding to requests for approval for promotions available to the customers assigned to Plaintiff. His inaction affected Plaintiff's sales numbers and the terms and conditions of her employment. Dugger had acted quickly to approve these sales promotions for the Plaintiff in the past. Moreover, Dugger acted quickly in approving promotions for other sales associates.

24. On September 3, 2019, Plaintiff was absent from work for an oncologist appointment related to her serious health condition.

25. As was customary, Plaintiff notified Dugger of this appointment as soon as practicable after she received notice of the appointment date and time which was approximately 2 months prior to the appointment. She also notified Dugger that the appointment was with her oncologist.

26. The following day, when she returned to work, Plaintiff submitted the doctor's note per the protocol that Dugger required. She placed the note in the file Dugger maintained for the Plaintiff located on his desk.

27. Dugger said nothing to Plaintiff regarding her absence the previous day. Nor did he say anything to her regarding Plaintiff's doctor's note.

28. The day after that, September 5, 2019, Dugger summarily discharged Plaintiff.

29. Specifically, after working approximately three (3) hours on September 5, 2019, Dugger sought to meet with Plaintiff to fire her.

30. In that conversation with Plaintiff, Dugger told Plaintiff that he had to fire her "due to [her] circumstances," in other words, her cancer, and that the order to terminate her employment came from "upper management" and named Adam Rice as a decision maker.

31. Dugger followed up by telling her that the termination will ultimately be a "good thing" for her because it will allow her to take time off to "focus on [her] health" and get better. Dugger went on to say that Plaintiff shouldn't worry because she could collect unemployment insurance.

32. In this conversation, Dugger never mentioned that Plaintiff was being fired for an alleged failure to provide a doctor's excuse for her absence and Dugger never asked Plaintiff if in fact she put a doctor's note in her file.

33. However, the stated reason for her discharge on the "exit interview" paperwork Dugger gave Plaintiff was that she did not provide a doctor's excuse for her absence on September 3, 2019.

34. Dugger, Rice, and, by extension, Fastenal willfully violated the Family and Medical Leave Act in discharging the Plaintiff "due to [her] circumstances," in other words, her cancer, so that she could collect unemployment insurance and "focus on [her] health."

35. Defendants further willfully violated the Act by falsifying internal documents to show that she was terminated for a wholly made-up, provably false, and pretextual reason.

36. There was, in fact, a note in Plaintiff's file and Dugger knew it (and would later testify under oath to it being there). Despite the presence of a doctor's note in Plaintiff's file excusing her absence on September 3, 2019, Dugger and Rice conspired to perpetrate a fraud and created documents falsely stating that Plaintiff did not turn in a doctor's note.

### *Subsequent Events*

37. Following Ms. Hall's discharge, she promptly applied for unemployment insurance benefits through the Maryland Department of Labor — Division of Unemployment Insurance ("Unemployment").

38. Despite Fastenal's previous statements encouraging Plaintiff to apply for unemployment insurance benefits, Fastenal challenged Plaintiff's entitlement to benefits.

39. Specifically, Fastenal falsely claimed that Plaintiff was terminated for violating the company's leave policy by failing to provide a doctor's excuse for her absence on September 3, 2019.

40. Based on Fastenal's false statements to Unemployment, Plaintiff's benefits were initially denied.

41. Plaintiff appealed the initial denial of her claim for unemployment insurance benefits and a hearing was held before a Hearing Examiner at the Maryland Department of Labor on October 29, 2019.

42. Rice and Dugger were present at the hearing on behalf of Fastenal.

43. Plaintiff was present at the hearing on behalf of herself.

44. Rice knowingly and willfully made false statements to the Hearing Examiner by maintaining that Plaintiff was fired for failing to provide a doctor's excuse for her absence on September 3, 2019, in violation of Fastenal's leave policy.

45. However, when Dugger was pressed by the Hearing Examiner regarding Plaintiff's doctor's note, Dugger truthfully testified and confessed under oath that there was in fact a doctor's note excusing Plaintiff's absence on September 3, 2019 in her file.

46. At that point, Rice and Dugger's conspiracy to violate Plaintiff's federal, and other rights unraveled.

47. Further, neither Rice, nor Dugger denied, disagreed with, or otherwise called into question Plaintiff's truthful assertion to the Hearing Examiner that Duggar required Plaintiff to place doctors' notes in a file that he maintained for the Plaintiff located on his desk and nothing more and that Plaintiff was not required to physically hand or electronically deliver, or otherwise submit her physicians' notes to anyone directly.

48. Plaintiff was awarded her unemployment insurance benefits.

49. Despite admitting *on the record* that Plaintiff had in fact provided the requisite doctor's excuse for her absence on September 3, 2019, related to her serious health condition in conformity with Fastenal's policies, Fastenal never offered to reinstate Plaintiff.

50. Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in April of 2020.

51. In May of 2020, Fastenal's General Counsel, Aaron K. Garms ("Garms") made false statements to the EEOC regarding the reason for Plaintiff's termination.

52. In Fastenal's Position Statement to the EEOC, Garms repeated the same provably false narrative that Plaintiff was fired for failing to provide a doctor's excuse for her absence on September 3, 2019 despite Dugger's confession *on the record* debunking that position months earlier.

53. Indeed, Garms knew or should have known that he was repeating a falsehood because Plaintiff's Charge referenced Fastenal's improper conduct in interfering with her unemployment claims as a basis for unlawful retaliation and he therefore had reason to investigate Fastenal's new position, *on the record*, that Plaintiff did, in fact, fully comply with Fastenal's policies.

# COUNT I
## INTERFERENCE WITH RIGHTS IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2615(a)(1) AGAINST ALL DEFENDANTS

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. Plaintiff notified Dugger and Fastenal that she needed leave in order to receive lifesaving treatment for Stage III cancer — a serious health condition.

56. Plaintiff was an eligible employee as defined by the Act, suffered from a serious health condition as defined by the Act and was therefore entitled to take FMLA leave for her cancer treatments.

57. Fastenal, as an employer, was, at all relevant times, covered by the Act.

58. Fastenal's own internal leave policy, to the extent it is more generous than the Act with respect to leave rights, created a contractual right to leave enforceable under the Act.

59. At all relevant times, Plaintiff provided sufficient notice to Dugger and Fastenal of her need for leave to treat her serious health condition.

60. Defendants' conduct as described herein violated the provisions of the FMLA and DOL regulations, which require covered employers to provide eligible employees with leave for treatment of a serious health condition and prohibit covered employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided under the Act.

61. Defendants willfully denied Plaintiff the benefits she was entitled to under the Act when they terminated her employment under provably false and/or pretextual reasons.

62. In addition, Defendants interfered with, restrained, and denied Plaintiff's exercise of or attempt to exercise her rights provided under the Act by, among other things: refusing to authorize her use of leave taken for an FMLA-qualifying reason for which Defendants had previously granted FMLA-protected leave; failing to treat all absences for the same qualifying reason as FMLA leave; failing to follow the notice requirements set forth in 29 C.F.R. § 825.300, including failing to notify her in writing of her eligibility to take FMLA leave within five business days, failing to designate her leave as FMLA-qualifying or to notify her in writing that her leave would not be designated as FMLA-qualifying, and failing to give her notice of the designation in writing within five business days; deciding that her leave would not be designated as FMLA-qualifying based on their desire to unlawfully terminate the Plaintiff's employment; failing to timely and properly designate her leave as FMLA leave despite being put on notice that she needed the leave for an FMLA-qualifying reason; failing to inquire further if it was necessary to have more information to determine if the leave was FMLA-qualifying; failing to request a new certification to the extent that they believed they had reason to question the appropriateness or duration of the leave sought and failing to timely request a certification within five business days after her leave commenced; failing to advise her that they found her existing certification incomplete or insufficient, failing to state in writing what additional

12

information was necessary to make her certification complete and sufficient; discriminating and retaliating against her for having exercised or attempted to exercise her rights; terminating her employment based on false and pretextual reasons directly related to her taking or requesting to take qualified leave; and failing to reinstate her.

63. Defendants' wrongful acts and omissions alleged in this Complaint were intentional, willful, and were not in good faith nor did Defendants have reasonable grounds for believing the acts or omissions described herein were not in violation of the Act.

64. Because of Defendants' interference with and denial of Plaintiff's rights, Plaintiff has suffered substantial damages, including, but not limited to, lost wages and benefits, and is entitled to all legal and equitable remedies available under the FMLA, including liquidated damages and attorneys' fees and costs.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2615(a)(2)
## AGAINST ALL DEFENDANTS

65. Plaintiff repeats and realleges paragraphs 1 through 64 as if fully set forth herein.

66. Plaintiff engaged in protected activity under the Act by, among other things, exercising her statutorily protected rights to request and attempt to take leave for cancer treatment — a serious health condition.

67. Defendants expressly terminated Plaintiff's employment "due to [her] circumstances," in other words, her cancer, and then knowingly, willingly, and willfully

13

falsified documents and engaged in a conspiracy to deprive the Plaintiff of her federal rights under the Act as described herein.

68. Plaintiff had performed her job duties satisfactorily and met or exceeded Defendants' legitimate expectations.

69. Defendants' conduct as described herein violated the FMLA, which prohibits covered employers from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the Act.

70. Defendants discriminated and retaliated against Plaintiff for taking leave covered under the Act by, among other things, engaging in a conspiracy to execute a scheme to deprive Plaintiff of unemployment insurance benefits for which she was entitled. Such conduct would dissuade others from engaging in similar protected activity under the Act such as taking leave for the treatment of a serious health condition.

71. Defendants' decision to terminate Plaintiff's employment was based on a conspiracy to falsify documents in furtherance of their plan to deprive Plaintiff of her federal rights under the Act.

72. Defendants' alleged reason for discharging Plaintiff is provably false and pretextual. Defendants discharged Plaintiff for requesting and taking leave under the Act.

73. Defendants' violations as alleged in this Complaint were intentional, willful, and were not in good faith nor did Defendants have reasonable grounds for believing the acts or omissions described herein were not in violation of the Act.

74. Because of the interference with Plaintiff's rights and retaliation she suffered as a result of Defendants' violations of the FMLA, Plaintiff has suffered substantial damages and is entitled to all legal and equitable remedies available under the FMLA including liquidated damages and attorney's fees and costs.

## COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER MARYLAND LAW - AGAINST ALL DEFENDANTS

75. Plaintiff repeats and realleges paragraphs 1 through 74 as if fully set forth herein.

76. Ms. Hall's status as an employee of Fastenal Company entitled her to a greater degree of protection from abusive conduct. As Ms. Hall's employers, Defendants were in a position of power over Ms. Hall and were uniquely situated to inflict distress upon her and to affect her interests. In addition, Defendants held roles of heightened responsibility to Ms. Hall and/or within Fastenal Company and, in some cases, they personally reassured Ms. Hall that although she was being terminated, she would be able to receive unemployment insurance benefits.

77. Instead, Defendants abused their positions of authority by, among other things, intentionally and unlawfully terminating the employment of Plaintiff — a cancer patient — "due to [her] circumstances" in other words, for having cancer; leading the Plaintiff to believe that the company would not challenge a claim for unemployment insurance; falsifying internal documents used to then challenge Plaintiff's claim for unemployment insurance; initially lying to the Hearing Examiner in an effort to carry out

15

a conspiracy to wrongfully and unlawfully deny a cancer patient and mother of two children her due unemployment insurance benefits.

78. Defendants intentionally engaged in this wrongful conduct toward Plaintiff with the purpose of inflicting emotional distress on her or, alternatively, their conduct was reckless and in deliberate disregard of a high degree of probability that emotional distress would result to her. Any reasonable person would have known that such distress would inevitably result from their wrongful conduct. Defendants had actual knowledge that Ms. Hall was a cancer patient — who suffered from Stage III cancer — and was peculiarly susceptible to emotional distress because she expressly advised Defendants that her cancer was life threatening causing her stress and anxiety. Defendants had actual knowledge of Plaintiff's life-threatening diagnosis.

79. The aforesaid conduct by Defendants was extreme and outrageous and beyond the bounds of decency in society and Plaintiff's emotional distress was reasonable and justified under the circumstances. Defendants not only violated Plaintiff's federal rights by blatantly interfering with her FMLA rights and retaliating against her, they knowingly and deliberately engaged in a conspiracy to manufacturer false documents in an attempt to perpetrate a fraud by knowingly, purposefully, and willingly making false statements to the Maryland Department of Labor —Division of Unemployment Insurance in an effort to cause grave financial harm to the Plaintiff by attempting to deny her unemployment insurance benefits for which she was rightfully entitled to receive and for

which she was to use for the sustenance of herself and her family including her two children.

80. Defendants conduct was intentional, deliberate, willful, malicious, and in callous disregard for Plaintiff's rights and her emotional wellbeing.

81. Due to Defendants' malicious and wrongful conduct, Plaintiff has suffered severe and extreme emotional distress including but not limited to nervousness, anxiety, grief, shame, humiliation, worry, and a sense of betrayal.

82. Plaintiff seeks actual and punitive damages against all Defendants in excess of $75,000.00 including but not limited to compensatory damages for past or future earnings, mental anguish, inconvenience, and reputational harm. Plaintiff further seeks prejudgment and post judgment interest, punitive damages, the cost and expenses of this suit including attorney's fees as a form of punitive damages, and other such further relief as the court may deem proper. Plaintiff seeks an award of punitive or exemplary damages against each Defendant in an amount reflecting the degree of their respective culpability.

## COUNT IV
## CIVIL CONSPIRACY UNDER MARYLAND LAW
## AGAINST ALL DEFENDANTS

83. Plaintiff repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

84. Defendants, by agreement or understanding, conspired to cause harm to the Plaintiff.

85. Defendants engaged in unlawful, dishonest, fraudulent, and/or tortious acts perpetrated in furtherance of the conspiracy to wrongfully deprive Plaintiff unemployment insurance benefits, and/or used unlawful or tortious means to accomplish the denial of Plaintiff's unemployment insurance benefits.

86. Because of Defendants' malicious tortious conduct, Plaintiff suffered actual legal damage including increased interest payments, late fees, and harm to her credit standing as a result of the unnecessary and unwarranted delay in receiving her unemployment insurance benefits.

87. Plaintiff seeks actual and punitive damages against all Defendants in excess of $75,000.00 including but not limited to compensatory damages for interest payments, late fees, and harm to credit standing, mental anguish, inconvenience, and reputational harm. Plaintiff further seeks judgment and post judgment interest, punitive damages, the cost and expenses of this suit including attorney's fees as a form of punitive damages, and other such further relief as the court may deem proper. Plaintiff seeks an award of punitive or exemplary damages against each Defendant in an amount reflecting the degree of their respective culpability.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A declaratory judgment that Defendants have discriminated and retaliated against Plaintiff in violation of the FMLA;

B. A permanent injunction enjoining Defendants and their agents, employees and/or representatives from engaging in any further acts of discrimination and retaliation as set forth above;

C. An Order requiring Defendants to initiate and implement programs that (1) will provide equal employment opportunities for employees who take leave pursuant to the FMLA; (2) will remedy the effects of Defendants' past and present acts of discrimination and retaliation; and (3) will eliminate the continuing effects of the discriminatory and retaliatory acts described herein;

D. An Order requiring Defendants to initiate and implement systems to ensure that individuals who take leave pursuant to the FMLA are treated in a non-discriminatory manner;

E. An award of back pay, lost benefits, and other damages for lost compensation and job benefits suffered by Plaintiff in an amount to be determined at trial;

F. An award for any actual monetary losses sustained by Plaintiff as a direct result of Defendant's FMLA violations;

G. Liquidated damages in an amount equal to Plaintiff's actual damages as allowed;

H. Any other equitable relief to which Plaintiff is entitled, including, but not limited to, expungement of any negative information contained in his personnel file and reinstatement to her former position with restoration of all leave and benefits or front pay;

I. An award of litigation costs and expenses, including reasonable attorney's fees and reasonable expert witness fees, to Plaintiff;

J. Any and all relief sought in any paragraph in this Complaint.

K. Pre-judgment and post-judgment interest; and

L. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

**DATED: 09/02/2022**

                                          Respectfully submitted,

                                              /s/

                                        David Baña  (Bar No. 21292)
                                        Law Office of David Baña Esq.
                                        4305 Saint Paul Street
                                        Baltimore, MD  21218
                                        Tel.: (443) 742-2390
                                        Fax: (410) 670-7573
                                        E-mail: david@davidbana.com

                                        *Attorney for Plaintiff*